UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-CV-094-KKC

DONALD R. HILL                                                                                           PETITIONER

VS:                       **MEMORANDUM OPINION AND ORDER**

CHARLES E. SAMUELS, JR., Warden                                                      RESPONDENT

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Donald R. Hill, an individual presently confined at the Federal Prison Camp in Manchester, Kentucky ("FPC- Manchester"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 and has paid the $5.00 filing fee.

This matter is now before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

CLAIMS

The petitioner claims that a recent change in Bureau of Prisons ("BOP") policy, reducing the amount of time which a federal prisoner is entitled to serve in a Community Corrections Center ("CCC"), also called "halfway houses," should not be applied to him because the policy (1) violates the Administrative Procedures Act ("APA") and (2) is an erroneous interpretation of 18 U.S.C. §3621(b) and §3624(c).

ALLEGATIONS OF THE PETITION

The petitioner has submitted his allegations in a completed petition form for filing a §2241 proceeding and a typewritten memorandum. Record Nos. 1 - 2.

Petitioner Hill writes that he was convicted of conspiracy to aid and assist in the filing of

false tax returns and to commit bank fraud, in violation of 18 U.S.C. §371, in the United States District Court for the Western District of Virginia, *United States v. Hill*, No. 1:02-CR-976-001, and on August 18, 2003, he was sentenced to 27 months' imprisonment, three years of supervised release, and restitution in the amount of $62,491.00.

The petitioner complains that at the time of his sentencing, the BOP had a policy of allowing prisoners to serve their last 6 months of incarceration in a CCC. On December 13, 2002, however, the BOP, under instructions from the Department of Justice, changed its interpretation of 18 U.S.C. §3621(b) to limit an inmate's placement in a CCC to only the last 10% of their sentence or 6 months. The petitioner alleges that when he entered the prison system he learned of the new policy, which meant that he cannot be eligible for a transfer to a CCC until July 7, 2005. He contends that under the old policy he could go to a CCC earlier.

Petitioner asks that he not be required to exhaust the BOP administrative grievance procedures, because federal courts have recognized that to do so would be a futility and take up so much time as to destroy the relief requested, the petitioner's supporting citations including *Colton v. Ashcroft*, 299 F. Supp.2d 681 (E.D.Ky. 2004), arising in this Court, the Honorable Jennifer B. Coffman, presiding.

As to his challenges to the new policy herein, the petitioner's legal position is that the policy is invalid and should not be followed (1) because it is a new substantive rule which was not promulgated in conformity with the APA, and (2) it is an erroneous and impermissible construction of the statutes granting the BOP broad authority over placement of inmates, 18 U.S.C. §§3621(b) and 3624(c). He states that these grounds have served other courts in invalidating the new BOP policy and cites, *inter alia*, *Dismas Charities, Inc. v. United States Dept. of Justice*, 287 F.Supp.2d

741, 744 (W.D.Ky. 2003). Additionally, in this Court, another judge has directed the BOP to grant a similarly situated petitioner placement in a CCC without regard to the new policy, the instant petitioner again citing the *Colton* case.

## DISCUSSION

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines the action: (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

This Court is familiar with the instant issues, from both the *Colton* case and similar memoranda filed by other prisoners at the Manchester, Kentucky prison.[1] It is true that under its old interpretation of 18 U.S.C. §3621 and 18 U.S.C. §3624(c), the BOP uniformly designated federal inmates in CCC's for the last 180 days (six months) of their sentences, even if that placement exceeded the last ten percent of their sentences, a policy known as the "Six Month Policy." Under the Six Month Policy, the petitioner may have been in a CCC placement by now.

On December 13, 2002, the Department of Justice's Office of Legal Counsel ("OLC") issued a memorandum ("the OLC Memo") declaring that the Six Month Rule was "unlawful." The OLC Memo concluded that the BOP could not designate a CCC as a place of confinement pursuant to 18 U.S.C. §3621, because a CCC is not a "penal or correctional facility" within the meaning of the statute. The OLC Memo stated a change in the BOP's longstanding interpretation of 18 U.S.C.

---

[1] *See, e.g., Gagne v. Samuels*, Lon. No. 05-CV-018-DCR.

§3624(c) and its previous policy regarding inmates' placement in CCC's.

On December 20, 2002, the BOP's General Counsel issued a "Memorandum for Chief Executive Officers" entitled "Community Confinement Procedure Changes" ("the December 20, 2002 Memorandum"). Pursuant to the change effected in the December 20, 2002 Memorandum, pre-release into CCC designations became limited to the last 10 percent of the prison sentence, not to exceed six months ("the 10% Rule"). As applied to the instant petitioner, the net effect of the current policy enabled the BOP to set the date for his pre-release into a CCC at July 7, 2005 (under the new "10% Rule"), and not an earlier date (under the old Six-Month Rule).

The petitioner relies heavily on this Court's *Colton* decision. The Court, however, finds decisive differences between the petitioners' situations. Colton had been sentenced and granted a date specific for his CCC placement *prior* to the December, 2002 implementation of the 10% Rule. He was on the edge of release to the CCC under a policy of providing prisoners CCC placement for their final six months, when the date was jerked away and another later one set, occasioned only by a change in BOP policy interpreting two statutes, 18 U.S.C. §3621(b) and portions of §3624. This Court could, therefore, address merely the legal issue of the validity of the changed policy and its application to that petitioner.

In the case of the instant petitioner, however, he has not alleged that his CCC eligibility date had been set under the old policy and then changed. The petitioner was not even sentenced until after the December 20, 2002 rule change. His CCC date has always been calculated under the 10% Rule and has always been the July 7th date. His own allegations are only that it would have been earlier under the old rule.

It is true that Colton was not required to exhaust his administrative remedies. However, the

4

BOP informed Colton in December, 2002, at the eleventh hour, that he would not be released on the date given him and his time in a CCC was being reduced to a little more than three months, based upon the OLC Memo and the newly adopted 10% Rule. Because there was a last-minute revelation of the change in date, timely exhaustion was virtually impossible before the original date set for his CCC placement would have passed; and without the waiver, the Court found, the petitioner would be "denied irretrievable community readjustment time." 299 F.Supp.2d at 692.

With regard to the exhaustion issue, federal prisoners are ordinarily required to exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241. *See Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992) (per curiam); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991); *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir. 1981) (per curiam); *Hardwick v. Ault*, 517 F.2d 295, 296 (5th Cir. 1975) ("[T]he federal courts have imposed upon federal prisoners the requirement that they `exhaust their administrative remedies in accordance with Bureau of Prisons policy . . . .'").

The instant petitioner does not allege exhaustion of the administrative process prior to filing in federal court. Rather, he states that he began the administrative remedy process with his grievance and that he appealed the denial of his request so far as the level of the BOP's Regional Director. He admits herein that he has not exhausted the BOP's administrative remedy system but asks that the exhaustion requirement be waived, again as in the *Colton* case.

In the instant petition, however, Petitioner Hill does not present herein a clear legal question which he had no time to challenge administratively. In fact, it is not even clear that Petitioner Hill ever raised the instant claims administratively before coming to district court, or that he never had enough time to do so. From his sentencing in August of 2003 and for 1½ years thereafter, this

5

petitioner had an opportunity to challenge the computation of his sentence. He merely claims to have started the administrative process and he provides a grievance he wrote at a late date, in January of 2005, without explanation of his inactivity for 20 months. Interestingly, the warden's response, dated January 19, 2005, reveals that the petitioner's grievance was about his request for home confinement, not an earlier CCC placement. One of the reasons for the exhaustion requirement is to prepare a record for the courts. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980).

Perhaps most importantly, the *Colton* court found that Petitioner Colton had a strong likelihood of success on the legal merits of one of his claims. This Court was writing on what was then an issue only recently presented to district courts. The legal ground for granting Colton the immediate relief he sought was based on the Court's finding that there was a strong likelihood of success on the merits of his claim that the 10% Rule was violative of the APA. Therefore, given the evaluation of his APA claim, as well as the above-described compelling circumstances, the Court waived exhaustion, granted Petitioner Colton preliminary injunctive relief, and ordered the BOP to place him in the CCC, without regard to the new policy.

Since the *Colton* case, however, the appellate court of this circuit has ruled on the APA issue–and it would no longer be likely to succeed. In *Dismas Charities, Inc. v. United States Department of Justice*, 401 F.3d 666 (6th Cir. March 11, 2005), a panel of the Sixth Circuit traced the change in the same BOP policy and found that the new rule is only an interpretation of the statutes, and "[t]he rulemaking requirements of §553 of the APA do not apply to 'interpretative

6

rules.' §553(a).'" *Id.* at 679-80.[2] This is consistent with the Supreme Court's direction that when rules are "akin to ... 'interpretive rule[s]' [they] 'do[ ] not require notice and comment.'" *Reno v. Koray*, 515 U.S. 50, 61 (1995) (quoting *Shalala v. Guernsey Mem. Hosp.,* 514 U.S. 87, 99 (1995)). Therefore, the instant petitioner's APA claim must fail.

With regard to the instant petitioner's argument that the new policy is an erroneous interpretation of 18 U.S.C. §3621(b) and §3624(c), the Court is not persuaded by his citations to other circuits and finds *Blair v. DeBoo*, 2004 WL 3052022 (D. Ct. 2004) persuasive. As to policy and program statements which are not formally promulgated, the *Dismas* Court noted that if they interpret statutes, they are merely internal agency guidelines. *See White v. Shalala*, 7 F.3d 296, 303-04 (2nd Cir. 1993) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843-44 (1984) and distinguishing between interpretive rules and legislative rules).

Yet, interpretive policy and Program Statements are "still entitled to some deference" and will be upheld if they are a " 'permissible construction' " of the law that they interpret. *Reno,* 515 U.S. at 61 (upholding the BOP's interpretation of 18 U.S.C. 3585(b) and quoting *Chevron,* 467 U.S. at 843); *see also Jacks v. Crabtree,* 114 F.3d 983, 985 n. 1 (9th Cir.1997), *cert. denied,* 523 U.S. 1009 (1998).

This Court finds that the policy at issue herein is interpretive of the cited statutes and is a permissible construction of them. Therefore, the Court concludes that the policy is entitled to some deference and the Court will defer to it. The instant petition challenging that policy must be denied

---

[2]This passage was followed by Footnote 8, wherein the appellate court wrote, "We assume, but need not decide, that the BOP policy is not exempt under the provision of §553 exempting 'general statements of policy.' *See generally Syncor International Corp. v. Shalala*, 127 F.3d 90, 94095 (D.C.Cir. 1997) (distinguishing 'general statements of policy' from 'interpretative rules' for §553 purposes").

not only for the petitioner's failure to exhaust his administrative remedies, but also on the merits.

Finally, a consideration of the same requirements which justified the grant of preliminary injunctive relief for Petitioner Colton does not militate in favor of the same result for Petitioner Hill. The four factors to be considered before granting a preliminary injunction are: (1) the movant's likelihood of success on the merits; (2) whether the movant could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*, 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985))).

Considering these factors in relation to the facts in this case, (1) for the reasons aforestated, Petitioner Hill is *not* likely to succeed on the merits of his APA claim or on his statutory interpretation claim. As to factor (2), irreparable injury, the petitioner has set forth no facts which support a claim that denying the relief requested will result in any *irreparable* injury, to himself or others. As to factors (3) and (4), the courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). Obviously, the Court is not of the opinion that the public interest would be served by interfering with the execution of the 10% Rule herein.

Therefore, the petitioner is not entitled to the injunctive relief he seeks.

CONCLUSION

Accordingly, for the foregoing reasons and the Court also being otherwise advised, **IT IS HEREBY ORDERED** as follows:

(1)   Donald R. Hill's request for temporary injunctive relief is **DENIED**;

(2)   his petition for writ of habeas corpus is **DENIED** and **DISMISSED**, *sua sponte*, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This the 26th day of April, 2005.

Signed By:
*Karen K. Caldwell*  KKC
United States District Judge